ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 2 2004

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

HENRY BRASWELL, ID # 759831,  )
                Petitioner,    )
vs.                            )       No. 3:02-CV-0342-M
                               )
DOUGLAS DRETKE,[1] Director,   )
Texas Department of Criminal   )
Justice, Correctional Institutions Division,  )
                Respondent.    )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A. Nature of the Case:** This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

**B. Parties:** Petitioner is an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID). Respondent is Douglas Dretke, Director of TDCJ-CID.

**C. Procedural and Factual History:** On September 18, 1995, the State indicted petitioner for allegedly sexually assaulting his adult stepdaughter. TR[2] at 3 (indictment); Statement of Facts, Vol. IIA at 137 [hereinafter cited as SF-volume # at page]. Prior to trial, the complainant executed

---

[1] On August 1, 2003, the Texas Department of Criminal Justice - Institutional Division became the Texas Department of Criminal Justice - Correctional Institutions Division, and Douglas Dretke became the Director of the renamed division. The Court thus substitutes him for Janie Cockrell. *See* Fed. R. Civ. P. 25(d)(1).

[2] "TR" refers to the state trial record in Cause No. F95-41637-VK.

an affidavit of non-prosecution, and the State filed a motion in limine to preclude testimony about the affidavit. *See* SF-I at 8-11. During the pretrial hearing, the trial court ruled that the affidavit was inadmissible unless "there's something in there" which was inconsistent with trial testimony. *Id.* at 10. The trial court made no other ruling regarding the admissibility of the affidavit and placed no other limitation on the cross-examination or impeachment of the complainant during the pretrial hearing. *See id.* at 8-11.

At trial, three witnesses testified for the State. The complainant testified that petitioner sexually assaulted her while she slept on September 7, 1995, and she provided details of the assault and subsequent events that day. *See* SF-IIA at 142-58. She also testified that the next morning, she again awoke to find petitioner laying beside her. *Id.* at 159-60. Her mother, petitioner's wife, testified that the complainant told her that petitioner had made sexual advances toward the complainant; she also testified that after she confronted him, petitioner ultimately apologized for his conduct. *Id.* at 175-76. Officer Talley of the Seagoville Police Department testified that petitioner reported the sexual assault in early September 1995. *Id.* at 182.

After the State rested its case-in-chief, the trial court held a *sub rosa*[3] hearing "to determine whether or not the defense would be allowed to bring up [the] affidavit of non-prosecution." SF-IIB at 6. The complainant testified that although she signed the affidavit, she did so at her mother's urging. *Id.* at 8-9. She further testified that she did not know why her mother was asking her to drop the charges against the petitioner. *Id.* at 9. Such testimony prompted defense counsel to ask: "Well,

---

[3] "*Sub rosa*" literally means "[c]onfidential, secret, not for publication." BLACK'S LAW DICTIONARY 1279 (5th ed. 1979). The term is often used to describe a hearing that is held outside the presence of the jury. *See Washington v. Estelle*, 648 F.2d 276, 277 (5th Cir. 1981) (noting state court records that utilize the term in such a manner); *Rose v. Cockrell*, No. 3:01-CV-0386-M, 2003 WL 22076265, at *4 n.1 (N.D. Tex. Jan. 7, 2003) (findings, conclusions, and recommendation utilizing the term in such a manner).

you didn't ask her: Mom, why do you want me to drop this?" *Id.* The trial court then interjected: "What has that got to do with this? You're trying to determine whether or not you can get into the jury whether she signed the affidavit. What her mom was thinking isn't hardly going to resolve that issue. So let's move on."[4] *Id.* at 9-10. The complainant thereafter conceded that she had received $1,000 prior to signing the affidavit, but denied that she received the money in exchange for dropping the charges against petitioner. *Id.* at 10-12. The complainant's sister testified that the complainant had stated that she would drop the charges for $1,000. *Id.* at 15.

At the conclusion of the hearing testimony, defense counsel argued that the affidavit of non-prosecution was material to the complainant's credibility. *Id.* at 18, 20. The State argued that the complainant signed the affidavit only because she was "pressured into it." *Id.* at 19. The trial court ruled the affidavit inadmissible and directed defense counsel to make sure that defense witnesses did not mention the affidavit or the circumstances of it. *Id.* at 21.

Defense counsel then sought clarification from the court as to whether he could inquire about the $1,000 payment without mentioning the affidavit. *Id.* at 21-27. Defense counsel attempted to overcome the trial court's reservations by explaining how the inquiry was relevant to his trial strategy and tactics. *Id.* After the trial court indicated that it was "not seeing the connection as clearly as [defense counsel]", counsel stated that "it will be a lot clearer once we bring in the other witnesses." *Id.* at 24. Although the trial court was still not convinced that it should allow such inquiry, it deferred ruling on the issue, stating: "Well, why don't you bring your witnesses on and develop some stuff other than that, which is whatever their prior relationship is and some other

---

[4] As will be seen *infra*, this interjection is relevant to one of petitioner's many claims.

things. Let me get a sense of how it might fit into it. And then I will let you know." *Id.* at 27. Immediately following that statement, defense counsel verified that the trial court was "going to hold [the issue] in abeyance." *Id.*

Petitioner thereafter commenced his defense by calling the complainant for cross-examination. *Id.* at 27-86. She testified that she had no conflict with petitioner prior to the alleged offense. *Id.* at 38. She testified that the offense occurred sometime between 6:45 and 7:15 a.m. *Id.* at 46. She testified that petitioner repeated his actions the next day at around 6:00 a.m. *Id.* at 62-65. She denied that she fabricated the allegations against petitioner. *Id.* at 71. She denied that she had petitioner arrested to teach him a lesson about "messing with" her and chastising her about the way she raised her child, not having a job, owing him money for her car, or the way she dressed. *Id.* at 71-72. Complainant also denied coercing her mother to testify on her behalf by threatening to keep her from seeing complainant's son. *Id.* at 74, 76.

Petitioner continued his defense with testimony from a friend, his two sons, the fiancé of his oldest son, and the complainant's sister. His friend testified that petitioner was at work a few minutes before 7:10 a.m. on the date of the offense, and that petitioner was at work by 5:00 or 6:00 a.m. the next day. *See* SF-IIB at 91-92, 96-99. Petitioner's oldest son, Bart, testified that he awoke at 5:45 a.m. on the date of the offense, and that he and his father left the house at approximately 6:30 a.m. so that his father could drop him off at work by 6:45 a.m. SF-III at 184-88. He testified that he saw nothing that supported the complainant's allegations. *Id.* at 184-89, 197. Bart's fiancé testified that Bart woke up at around 5:30 a.m. SF-IIB at 155. Petitioner's youngest son, Joe, testified that his father woke him at 6:20 to 6:30 a.m. before leaving with his brother to go to work. *Id.* at 114. He further testified that he saw nothing to support the complainant's allegations. *Id.* at 127.

4

The complainant's sister testified that petitioner and Bart left together and were not at home during the time complainant alleges the offense was committed. *Id.* at 230-32. She also testified that her sister threatened her and her mother that they would not see the complainant's infant son if they "stood by" petitioner or remained in the household with him or his sons. *Id.* at 227, 250-51. All of the family members also testified about various conflicts between petitioner and the complainant. *See* SF-IIB at 111-12, 120, 147, 154-55; SF-III at 189-201, 216-23.

On August 9, 1996, a jury convicted petitioner of sexual assault. (Pet. for Writ of Habeas Corpus (Pet.) ¶¶ 2-6); SF-III at 305. The court sentenced him to thirty-five years imprisonment. SF-III at 338. On July 28, 1998, the Fifth District Court of Appeals of Texas at Dallas found sufficient evidence to support the conviction and thus affirmed the conviction. *Braswell v. State*, No. 05-96-01275-CR, 1998 WL 420316, at *1-5 (Tex. App. – Dallas July 28, 1998, pet. ref'd), *cert. denied*, 528 U.S. 860 (1999). On February 3, 1999, the Texas Court of Criminal Appeals refused petitioner's PDR. (Pet. ¶ 9.) On October 4, 1999, the Supreme Court denied petitioner's request for writ of certiorari. (*Id.*) On July 12, 2000, petitioner filed a state application for writ of habeas corpus.[5] S.H. Tr.[6] at 4. On August 23, 2001, the trial court entered Findings of Fact and Conclusions of Law with respect to that state writ. *Id.* at 158-71. On November 14, 2001, the Texas Court of Criminal Appeals denied petitioner's application without written order on the findings of the trial court. *Ex Parte Braswell*, No. 34,333-05, slip op. at 1 (Tex. Crim. App. Nov. 14, 2001).

---

[5] Petitioner also filed other state applications for writ of habeas corpus which are unrelated to the conviction he challenges in the instant action.

[6] "S.H. Tr." denotes the state habeas records attached to *Ex Parte Braswell*, No. 34,333-05, slip op. (Tex. Crim. App. Nov. 14, 2001).

On January 29, 2002, petitioner filed the instant petition for federal habeas relief. (*See* Pet. at 9.) Respondent thereafter filed an answer and provided the state-court records. Petitioner subsequently filed a Declaration in Response to Respondent's Answer (hereinafter referred to as Decl. Resp.) and Additional Authorities in Support.

D. **Substantive Issues:** Petitioner asserts that he is being held unlawfully by respondent on the following "grounds of error"[7]:

1.   factual and legal insufficiency of the evidence;

2.   trial court error in limiting cross-examination of victim in violation of his right to confront his accuser;

3.   void indictment;

4.   ineffective assistance by appellate counsel in not raising claims on appeal;

5.   lack of an "outcry" as required by state law;

6.   disregard of legislative intent by appellate court;

7.   prosecutorial misconduct;

8.   violation of his due process or confrontation rights by trial court in several respects; and

9.   ineffective assistance by trial counsel in various respects.

(*See* Mem. Supp. at Claims 1 through 9.)

E. **Exhaustion:** Respondent contends that petitioner has not sufficiently exhausted his state remedies with respect to his "claim that there was no outcry as required under state law" (Claim 5),

---

[7] The Court will refer to these grounds as claims. Because petitioner does not number the pages of his memorandum in support, the Court will cite to the memorandum by reference to the specific claim number, *i.e.*, one through nine, when citation is necessary. Also, since resolution of some claims are somewhat dependent upon resolution of other raised claims, the Court considers the claims in a different order than that presented by petitioner.

as well as his "indictment claim [(Claim 3)], jury charge claims, and claims regarding the exclusion of the affidavit of non-prosecution." (Answer at 6, 8-13.) The jury charge claims and claims regarding the exclusion of the affidavit of non-prosecution appear to be part of Claims 2 and 8. Respondent argues that these claims are procedurally barred from federal habeas review. (*Id.* at 6.) He does not seek dismissal for the failure to exhaust, but rather on the related ground of procedural bar. (*Id.*) Petitioner, on the other hand, contends that these claims should not be procedurally barred. (*See* Decl. Resp.)

The Court need not definitively decide whether the alleged unexhausted claims should be procedurally barred. Although a petitioner must generally exhaust state remedies before seeking federal habeas relief, the Court may, nevertheless, deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Fifth Circuit has recognized that federal courts may not **grant** habeas corpus relief on claims which were "denied review by the state courts because of a procedural default, absent a showing both of cause for the default and resulting prejudice." *McKinney v. Estelle*, 657 F.2d 740, 743 (5th Cir. 1981). *McKinney* thus implies that the district courts may deny habeas relief for procedurally defaulted claims. In this instance, it appears most efficient to deny the claims on the merits rather than become embroiled in the dispute about procedural bar. Because it appears that petitioner is entitled to no habeas relief on the alleged unexhausted claims, the Court bypasses the procedural bar dispute in the interests of judicial efficiency and proceeds to the merits of claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The court of appeals also considered the merits of petitioner's sufficiency claims raised on direct appeal. *Braswell v. State*, No. 05-96-01275-CR, 1998 WL 420316, at *1-3 (Tex. App. – Dallas July 28, 1998, pet. ref'd). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the sufficiency claims and claims raised in petitioner's state writ.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's various claims.

## III. JURISDICTION OF TRIAL COURT

In his third claim, petitioner contends that the indictment against him was fundamentally defective so as to deprive the trial court of jurisdiction. Specifically, he claims that the trial court

lacked jurisdiction to convict him because the indictment failed to allege the intent element of TEX. PENAL CODE § 22.011(b)(3) and (5).

"The question whether a defective state indictment confers jurisdiction on the state trial court is a matter of state law." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Federal courts will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the jurisdictional issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the jurisdictional claim. *Id.* at 598-99. In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner raised this jurisdictional issue in his state writ. *See* S.H. Tr. at 8-12. The Texas Court of Criminal Appeals denied that writ on the findings of the trial court. *See Ex Parte Braswell*, No. 34,333-05, slip op. at 1 (Tex. Crim. App. Nov. 14, 2001). Although the trial court found that petitioner had waived any error with respect to the indictment by failing to object to it before trial, it also specifically found the indictment sufficient to confer jurisdiction on the court. S.H. Tr. at 159-60. Consequently, this Court will not consider the claim that the trial court lacked jurisdiction to convict petitioner due to a defective indictment filed against him in violation of state law.

## IV. OUTCRY

In his fifth claim, petitioner alleges that the trial court should not have submitted his case to the jury because the requirements of TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp. 1994)

10

had not been satisfied.  He contends that the complainant did not inform her mother of the offense, but rather merely told her mother that he had made sexual advances towards her.  He argues that conveying such information to her mother does not satisfy the requirements of Article 38.07.

At the time of the alleged offense, Article 38.07 provided that a conviction for sexual assault "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."  The courts refer to this requirement as the "'outcry or corroboration' requirement."  *Carmell v. Texas*, 529 U.S. 513, 517 (2000).  Texas law further provides that "[i]n all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction."  *See* TEX. CODE CRIM. PROC. ANN. art. 38.17 (Vernon 1979).  Thus, if Texas law requires a corroborating witness or circumstances, and such requirement is not met, then the jury must be instructed to render a verdict of acquittal.

In this instance, the imprecision of the mother's testimony does not necessarily dictate a finding that the requirements of Article 38.07 have not been met.  First, the complainant specifically testified that she told her mother "exactly what happened."  SF-IIA at 161, *accord* SF-IIB at 67.  Second, the evidence shows that the victim reported the offense to relevant police authorities.  SF-IIA at 163 (testimony of complainant), 182 (testimony of Officer Talley that the complainant filed a complaint of sexual assault against petitioner).  In *Sims v. State*, 84 S.W.3d 768, 774 (Tex. App. – Dallas, 2002, no pet.), a conviction on the uncorroborated testimony of the victim was permitted where the victim had informed the police of the offense within one year.  Article 38.07 thus permits

11

the conviction on the uncorroborated testimony of the victim, and the trial court properly submitted petitioner's case to the jury for deliberation.

Moreover, a mere violation of state law such as Article 38.07 does not entitle one to federal habeas relief. Such relief is available only for a violation of the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Neither the Constitution nor any federal law or treaty require a corroborative witness or a timely outcry by the victim of a sexual assault to support a conviction. Relying on *Carmell v. Texas*, 529 U.S. 513 (2000), petitioner argues that Article 38.07 creates a sufficiency-of-the-evidence rule. The Court considers the sufficiency of the evidence in the next section.

## V.  SUFFICIENCY OF THE EVIDENCE

In his first claim, petitioner contends that the evidence presented against him at trial is factually and legally insufficient to support his conviction. He contends that the State failed to show that the complainant did not consent to his actions. He submits that jury instructions did not define what constitutes "without consent" as alleged in the indictment. He argues that "[t]he common and ordinary meaning of without consent means an affirmative no."

## A.  Factual Sufficiency

Texas state appellate courts are imbued with the authority to conduct factual sufficiency reviews of the evidence. The authority to conduct factual sufficiency reviews derives from the Texas Constitution and statutory authority, and not from any federal constitutional right. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). Thus, the Texas courts' more exacting factual sufficiency standard does not implicate federal constitutional concerns. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Neither the United States Supreme Court nor the Fifth Circuit Court

12

of Appeals has recognized factual insufficiency as a valid basis for habeas relief. Accordingly, petitioner's factual sufficiency claim fails because he has shown no deprivation of any federally-secured right.

## B. Legal Sufficiency

Although a factual sufficiency claim raises no Constitutional deprivation, a claim that the evidence is legally insufficient to support the conviction does raise a claim that is subject to federal habeas review. "A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-

13

guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. Such independent analysis is required so as to avoid reliance upon an incorrect jury charge or indictment. *Id.* When considering a claim of insufficient evidence to support the underlying conviction on federal habeas review, this Court should only determine "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

In this case, the State charged petitioner with sexual assault. TR at 3. The indictment specifically charged that, on or about September 7, 1995, in Dallas County, Texas, petitioner did "unlawfully then and there knowingly and intentionally cause penetration of the female sexual organ of . . . the complainant, without the consent of the complainant, by means of an object, to wit: finger." *Id.* The trial court, furthermore, read the following charge to the jury: "A person commits

14

the offense of sexual assault if the person intentionally or knowingly causes the penetration of the female sexual organ by any means." *Id.* at 65. It further instructed the jury that if it "find[s] from the evidence beyond a reasonable doubt" that petitioner penetrated the sexual organ of the complainant with his finger without the complainant's consent, then it will find petitioner guilty of sexual assault. *Id.* at 66-67.

Under Texas law a person commits sexual assault when he "intentionally or knowingly . . . causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent." *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon 1994). A sexual assault is "without the consent of the other person if . . . the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." *Id.* § 22.011(b)(5). Section § 22.011(a)(1)(A) sets out the substantive elements of sexual assault.[8]

In this instance, the complainant testified that on the morning of September 7, 1995, she awoke to find petitioner penetrating her vagina with his finger and fondling her breast. SF-IIA at 142-46; SF-IIB at 56-57. She testified that, because she "had been asleep" she "wasn't sure what had just happened." SF-IIB at 58. She testified that she had not given him permission to do such things, and that she did not want him to do such things. SF-IIA at 146. The complainant's mother testified that petitioner tried to apologize for his actions toward the complainant. *Id.* at 176.

---

[8] Petitioner argues that Texas also requires an outcry or corroboration for sexual assault cases. Under Texas law, the testimony of the victim alone can be sufficient evidence to support a conviction for sexual assault. *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App. – Dallas 1994, no pet.), *accord* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp. 1994). Athough TEX. CODE CRIM. PROC. ANN. art. 38.07 requires an outcry or corroboration for sexual assault cases under § 22.011(a)(1)(A), such requirement is a procedural requirement rather than a substantive element of the offense. As noted by the Supreme Court, "Article 38.07 establishes a sufficiency of the evidence rule respecting the minimum quantum of evidence necessary to sustain a conviction." *Carmell v. Texas*, 529 U.S. 513, 517-18 (2000). When corroboration or outcry requirements are not met, the testimony of the victim alone is not sufficient evidence to support a conviction under the Texas procedural rule. *See Scoggan v. State*, 799 S.W.2d 679, 683 (Tex. Crim. App. 1990). *Scoggan* does not make the outcry or corroboration requirements essential, substantive elements of sexual assault.

15

Under *Jackson*, the complainant's testimony alone is sufficient to support petitioner's conviction for sexual assault.[9] Such testimony established that petitioner penetrated her sexual organ without her consent. The testimony also established that the complainant was asleep during the assault. The jury could reasonably infer that petitioner knew that the complainant was unaware that the sexual assault was occurring.

Although petitioner presented alibi testimony through four witnesses that he was not near the complainant on the date and time of the alleged offense and tried to convince the jury that the complainant fabricated her allegations to get back at petitioner for various conflicts between him and her, the jury made its credibility determination and found the State's witnesses more credible than the witnesses for the defense. Viewed in a light most favorable to the prosecution, the Court finds that the record supports the jury verdict. From the evidence, a rationale jury could conclude that petitioner intentionally or knowingly caused his finger to penetrate the complainant's sexual organ without her consent. A rationale jury could conclude that petitioner knew that the complainant was asleep and thus unaware that the sexual assault was occurring. In short, a rational trier of fact could have found the essential elements of the sexual assault offense beyond a reasonable doubt. A rational trier of fact could have found the complainant's allegations true and found against petitioner on his alibi defense. The Court finds that the evidence was constitutionally sufficient to convict petitioner for sexual assault. *See Bledsue*, 188 F.3d at 262.

---

[9] Nothing in Texas law requires a corroborative witness or an outcry by a sexual assault victim within any pre-established time period to satisfy federal constitutional requirements for sufficiency of the evidence. In this case, furthermore, the victim made a timely outcry thus negating any need for corroborative testimony even were such corroboration required in the absence of a timely outcry.

16

Petitioner raised his insufficiency claim on direct appeal. *See Braswell v. State*, No. 05-96-01275-CR, 1998 WL 420316, at *1-3 (Tex. App. – Dallas July 28, 1998, pet. ref'd). The court of appeals applied the *Jackson* standard to the facts of the case and denied the claim. *Id.* at *2-3. The Court gives "great weight" to the state-court determination that sufficient evidence supports the conviction. *See Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). Petitioner has failed to carry the heavy burden imposed by 28 U.S.C. § 2254(d), as interpreted by *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), to show that the state court determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, petitioner is entitled to no federal habeas relief on his claim that the evidence is legally insufficient to support his conviction.

## VI.  PROSECUTORIAL MISCONDUCT

In his seventh claim for relief, petitioner complains that the prosecutor engaged in misconduct by:

A.  forcing jurors to commit to facts during voir dire;

B.  referring to petitioner as "this guilty person" in violation of the presumption of innocence;

C.  asking a leading question;

D.  bolstering the credibility of State witnesses;

E.  using an unproven extraneous offense;

F.  commenting on petitioner's failure to testify; and

17

G.   striking at the defense's jugular.[10]

Petitioner also claims that the cumulative effect of the enumerated misconduct (Claim H) deprived him of a fair trial.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* (quoting *Rogers*, 848 F.2d at 608).

In this case, petitioner alleges both general violations of due process and a specific violation of his Fifth Amendment right to remain silent. When necessary to resolve these alleged violations, the Court will set forth the relevant test for both violation types. If the Court finds no misconduct, there is no need to apply either test.

## A.   Forcing Jurors to Commit During Voir Dire

Petitioner claims that, during voir dire, the State impermissibly forced jurors to commit themselves to how they would consider certain trial facts and testimony. He complains about the following questions by the prosecutor:

Q:   How might you expect to see lack of consent proven to you?

---

[10] This claim includes allegations that the prosecutor struck at petitioner "over the shoulder" of defense counsel and attempted to inflame the jury against petitioner. The Court uses the petitioner's vernacular – striking at the defense's jugular – to readily describe the claim.

> Q:  Okay.  Basically we have finger penetration of an adult female sexual organ without her consent.  Is there anyone sitting here now who says, after all this, I'm not sure that should be an offense, or, I'm not sure that should carry penitentiary time.  I don't know that that's serious enough.  Anyone feel that way?

SF-I at 55, 72-73.  In considering petitioner's state habeas application, the trial court found that "[t]he record reflects that the prosecutor was simply asking the jury if they could follow the law in this situation where there was no medical evidence."  S.H. Tr. at 161.  The Texas Court of Criminal Appeals adopted that finding when it denied petitioner's state writ on the findings of the trial court.

Considering the above questions in the context of the voir dire questioning as a whole, *see* SF-I at 54-58, 66-73, it is clear that the prosecutor was merely determining whether the potential jurors could follow the law regarding what constitutes a sexual assault, including the meaning of "without consent."  The trial court had previously discussed the elements of sexual assault, and the particular charge against petitioner in his indictment.  *See id.* at 39-41.  The prosecutor merely reiterated the charges against petitioner in the second complained-of voir dire question.  Under these circumstances, the prosecutor in this instance did not overstep permissible questioning during voir dire.

Because the above questions do not constitute misconduct on the part of the prosecutor, this claim fails to entitle petitioner to any federal habeas relief.  In the absence of misconduct on the part of the prosecutor, there is no need to determine whether a due process violation occurred.

## B.  Presumption of Innocence

Petitioner also claims that the prosecutor violated his right to be presumed innocent by referring to him as "this guilty person" in the following question during voir dire:

> [T]he question at that point [(having no medical evidence)] is, who's saying, Well, I can believe the woman. I can believe it happened. But if there's no other evidence or you don't have any medical evidence, because of the way it happened, not for anyone's fault, I'm going to let this guilty person go . . . .

SF-I at 70.  The trial court again found that the prosecutor was attempting to see whether potential jurors could follow the law when there is no medical evidence to support the case.  S.H. Tr. at 161.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice."  *Estelle v. Williams*, 425 U.S. 501, 503, (1976).  The record reflects that the prosecutor was speaking in hypothetical terms, not specifically referring to petitioner as "this guilty person."  The prosecutor was merely determining whether the potential jurors could follow the law despite an absence of medical evidence of a sexual assault.  The prosecutor in this instance did not overstep permissible questioning during voir dire.  The prosecutor did not infringe on the presumption of innocence.

Because the above question does not constitute misconduct on the part of the prosecutor, this claim fails to entitle petitioner to any federal habeas relief.  The Court thus need not determine whether a due process violation occurred.

## C. Leading Question

Petitioner also contends that the prosecutor used a leading question to supply the complainant with a false memory and thus placed false evidence before the jury.  The prosecutor indeed used a leading question on direct examination of the complainant:

> Q    Okay.  I need to ask you a few more questions here.  The hand that he had in your pants, what was he doing?
>
> A    He was – I don't know what to say.
>
> Q    Let me ask you this.  Did he have his fingers inside your vagina?

A   Yes.

*See* SF-IIA at 144-45. Defense counsel immediately objected to the last question as leading, and at

counsel's request, the trial court directed the jury to disregard the question and answer. *Id.* at 145.

The following exchange then occurred:

> Q   Okay. Leila, I know this is difficult for you. Take a deep breath. Tell the jury
> what Mr. Braswell was doing.
>
> A   He had his finger in my vagina. Oh, God.

*Id.* The trial court found that the prosecutor "did not plant a false memory" in the complainant's

mind. S.H. Tr. at 162. It further found that the complainant's "testimony was consistent with what

she told her mother and the police." *Id.* The record supports these findings. SF-IIA at 175-76 (testi-

mony of mother), 182, 207, 211-212 (testimony of Officer Talley).

Texas law provides that "[l]eading questions should not be used on the direct examination

of a witness except as may be necessary to develop the testimony of the witness." TEX. R. EVID.

611(c).[11] The rule further provides that interrogation by leading questions is permissible when

examining an adverse party, a witness identified with an adverse party, or a witness who has been

deemed hostile.

In this instance, although the complainant was neither an adverse party, a witness identified

with an adverse party, nor a hostile witness, Rule 611(c) permits leading questions when necessary

to develop the testimony. It appears that the prosecutor simply elicited testimony to develop the

record. While a transcript of testimony is not the best medium to convey emotion, it appears from

---

[11] At the time of petitioner's trial, TEX. R. CRIM. EVID. 610(c) applied. That rule is now found in the same form at TEX.
R. EVID. 611(c). *See Armstead v. State*, 977 S.W.2d 791, 795 n.4 (Tex. App. – Fort Worth 1998, pet. ref'd).

the written transcript that the witness was upset. *See* SF-IIA at 144 (showing that the prosecutor asked the witness if she was "okay" just after first eliciting testimony that petitioner had placed his hand in her pants), 145 (indicating that the testimony was difficult for the complainant and that she might need to take a deep breath). If the prosecutor was eliciting testimony to develop the record because the witness was upset, the use of the leading question appears proper under state law.

The Court, however, need not definitively decide whether such use constitutes misconduct. Even assuming that the use of the leading question under these facts constitutes misconduct, it would not constitute a violation of due process under the test applicable to generic violations of due process. Such test requires the Court to ask whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *DeChristoforo*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).[12]

---

[12] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

Under this standard, the prosecutor's use of the leading question did not constitute a violation of due process. The trial court cured any potential prejudice to petitioner by instructing the jury to disregard the leading question and the resulting answer. The complainant then testified that petitioner had his finger in her vagina. This testimony was consistent with the complainant's prior statements to her mother and the police. Under these circumstances, there is no reasonable probability that the verdict might have been different had the prosecutor refrained from the using the leading question. The use of the leading question did not render petitioner's trial fundamentally unfair. Consequently, this claim entitles petitioner to no habeas relief.

## D.  Bolstering Credibility of Witnesses

Petitioner also contends that the prosecutor improperly bolstered the credibility of State witnesses. He points to five instances where the prosecutor vouched for the credibility of the complainant and/or her mother:

1.  "The credible evidence was from Leila and her mother." SF-III at 284.

2.  "Her story has been credible and consistent throughout." *Id.* at 295.

3.  "I submit to you that [the complainant's] story was credible throughout and it's consistent." *Id.* at 296.

4.  "But I will submit to you that she got up here and told the truth." *Id.* at 301.

5.  "I submit to you that she testified truthfully and that [her mother] testified truthfully." *Id.*

The trial court found that the prosecutor was not vouching for the credibility of the witnesses, but merely summarizing the evidence. S.H. Tr. at 162.

To properly evaluate the propriety of specific statements made in closing arguments, the Court considers the statements in the context of closing arguments as a whole. Texas case law per-

23

mits prosecutors to respond to arguments of opposing counsel as part of "proper jury argument." *See*

*Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Furthermore, the Fifth Circuit Court

of Appeals has expounded upon the role of the prosecutor in making closing arguments:

> A prosecutor's duty in closing arguments is to be scrupulous and to avoid all efforts
> to obtain a conviction by going beyond the evidence before the jury or by putting the
> sanction of his office behind the testimony of the witnesses.  The sole purpose of
> closing argument is to assist the jury in analyzing, evaluating and applying the evi-
> dence.  The prosecutor may refer to matters that are in evidence, and he may even
> present what amounts to a bolstering argument if it is specifically done in rebuttal to
> assertions made by defense counsel in order to remove any stigma cast upon him or
> his witnesses.

*United States v. Dorr,* 636 F.2d 117, 120 (5th Cir. 1981) (citations omitted).

In this case, defense counsel began attacking the complainant's and her mother's testimony

early in closing argument and continued throughout.  *See* SF-III at 287 ("So now let's talk about this

credibility.  You've had some fairly interesting contrasts in the question of credibility . . . ."); 288

("They brought her mom in here. . . . Eight times she woke up one day and decided to go out and

commit a crime.  A crime that sheds light on her moral turpitude, on her integrity, on her willingness

to live by the truth. . . . I submit to you she could probably sell you the Brooklyn bridge and not blink

an eye."); 289-90 ("But the interesting part about the credibility issue is, you've got a woman here

[(the complainant)] who . . . [is] a liar . . . did you see her trying to dry hock them tears out of her

eyes the whole time?"); 293 ("Search your hearts about the credibility of that woman sitting right

on the front row and the way she testified.").  The last four alleged instances of bolstering in this case

occurred in direct response to the closing argument of defense counsel.  Viewing the closing

statements in the aggregate, the Court does not find that the prosecutor improperly bolstered the

State witnesses during the rebuttal portion of closing statements, *i.e.*, by the last four identified instances of improper bolstering.

With respect to the first alleged instance of bolstering, the Court also finds that this does not constitute improper bolstering of the witnesses. The statement made at the end of the initial portion of the State's closing – "The credible evidence was from Leila and her mother" – did not put the sanction of the prosecutor's office behind the testimony of the witnesses. As noted by the trial court, the prosecutor was merely summarizing the evidence. The prosecutor had already recognized that "it all boils down to who do you believe." SF-III at 282. In rebuttal, the prosecutor specifically stated:

> I submit to you, there's only one thing for you to go back in that jury room and decide. That is, was [the complainant] telling the truth. If you don't believe she was telling the truth, go ahead and find that man not guilty and let's just all go home. That's all it comes down to.

*Id.* at 294.

Because the prosecutor engaged in no improper bolstering of State witnesses, petitioner is entitled to no federal habeas relief on this claim. When there is no misconduct by the prosecutor there is no need to determine whether such conduct violated petitioner's due process rights.

**E.  Extraneous Offense**

Petitioner also claims that the prosecutor engaged in misconduct by using an unproven extraneous offense in violation of his right to notice. When considering petitioner's state application for writ of habeas corpus, the trial court found evidence of the extraneous offense admissible under TEX. R. CRIM. EVID. 404(b). S.H. Tr. at 162. The Texas Court of Criminal Appeals adopted such finding when it denied that state application.

25

In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). In view of the state ruling of admissibility, this Court will defer to the state-court determination of Texas law. Finding the evidence properly admitted under Texas law, the Court is unable to find any misconduct by the prosecutor in using the extraneous offense.

## F. Comment on Failure to Testify

Petitioner also alleges that the prosecutor engaged in misconduct when he indirectly commented on petitioner's failure to testify at trial when the prosecutor stated: "There is nothing that you haven't heard about . . ." and "Well, what testimony do you have that they didn't get along, that there was such a conflict between them that it couldn't go on anymore." SF-III at 284, 298. Petitioner raised this claim in his state writ. In considering that writ, the trial court found that the prosecutor did not comment on petitioner's failure to testify. S.H. Tr. at 162. The Texas Court of Criminal Appeals adopted this finding when it denied the state petition on the findings of the trial court.

When alleged prosecutorial misconduct implicates a constitutional right "such as the right to remain silent,"[13] the courts ask whether the statement of the prosecutor "was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citations and internal quotation marks omitted). If the prosecutorial misconduct is constitutional error under this test, the courts then must determine whether the error is harmless. *Id.* "A comment regarding a

---

[13] "The Fifth Amendment prohibits a trial judge, a prosecutor or a witness from commenting upon a defendant's failure to testify in a criminal trial." *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990) (footnote omitted).

26

defendant's Fifth Amendment rights must have a clear effect on the jury before reversal is warranted." *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990).

In the instant case, it does not appear that the prosecutor commented on petitioner's failure to testify. The prosecutor's statements do not appear manifestly intended to be taken by the jury as a comment on the failure of petitioner to testify. They are not of such character, furthermore, that the jury would naturally and necessarily take them to be a comment on his failure to testify. The first comment had to do with not placing the police on trial. The second comment came when the prosecutor was discussing testimony from the complainant and other family members. Petitioner was not the only person who could answer the rhetorical questions posed by the prosecutor. The prosecutor made no statement about petitioner's right to remain silent sufficient to warrant habeas relief.

Further, even assuming prosecutorial misconduct which amounts to a constitutional error, such error would be harmless. Nothing indicates that the statements of the prosecutor had a substantial or injurious effect or influence on the jury's verdict. Petitioner has not shown how the alleged prosecutorial misconduct actually prejudiced him.

## G. "Str[iking] at the Jugular" of the Defense

Petitioner also claims that the prosecutor "struck at the jugular" of his defense during closing statements when he stated: "And it is insulting for the defense to suggest that because it's a woman and because it involves sex that she is not worthy of believe [sic], and the police have to check out everything about her." *See* SF-III at 283-84 (setting out transcription of statement). This claim includes allegations that the prosecutor struck at petitioner "over the shoulder" of defense counsel and attempted to inflame the jury against petitioner. The trial court found the statement to be a summary of the evidence, not an attack on counsel. S.H. Tr. at 163.

To obtain federal habeas relief for this alleged generic due process violation, petitioner must show that the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

In this case, the complained-of statement does not appear to be a direct attack on defense counsel or an attack on petitioner "over the shoulder" of defense counsel. It does not appear inflammatory such that it would invoke emotions within the jurors that could cloud the proper determination of petitioner's guilt or innocence. It does not appear that the prosecutor engaged in misconduct when he made the complained-of statement. In any event, were the Court to find the statement constitutes misconduct, the claim would fail because there is no reasonable probability that the verdict might have differed had the prosecutor not made the statement. The statement did not render petitioner's trial fundamentally unfair.

Because it appears that the prosecutor engaged in no misconduct by the above statement in his closing, and because such statement did not render petitioner's trial fundamentally unfair in any event, this claim entitles petitioner to no habeas relief.

## H. Cumulative Error

Petitioner also claims that the cumulative effect of the prosecutorial errors deprived him of a fair trial. The trial court "found no prosecutorial error" and thus found the allegation of cumulative error to be without merit. S.H. Tr. at 163.

"The Sixth Amendment guarantees a fair trial and an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). It is well settled that "'[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Id.* at 727 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). The Fifth Circuit, furthermore, has recognized the concept of cumulative error. *See Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992). Nevertheless, it held that

> federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Id.* at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In this instance, although petitioner makes numerous allegations of prosecutorial misconduct, the Court has found no merit to any of them individually. Most of the alleged misconduct was found not to be misconduct at all. Moreover, to the extent there was any prosecutorial misconduct of constitutional dimension, such misconduct did not so infect the trial that petitioner's conviction violates due process. Consequently, petitioner is entitled to no habeas relief on his claim of cumulative error.

## I. State Court Consideration of Prosecutorial Misconduct Claims

Petitioner raised each of his prosecutorial misconduct claims in his state writ. The state courts adjudicated the claims on the merits. The decisions of the state court do not appear inconsistent with applicable Supreme Court precedent. The decisions do not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence

29

presented to the state court.  Under applicable Supreme Court standards and the AEDPA standards,

petitioner is entitled to no habeas relief on his claims of prosecutorial misconduct.

## VII.  TRIAL COURT ERROR – RIGHT OF CONFRONTATION

In his second and eighth claims for relief, petitioner makes numerous allegations of trial court

error relating to his right to confront witnesses presented against him.  Petitioner claims that the trial

court violated his rights under the Confrontation Clause by:

> A.  excluding an affidavit of non-prosecution;
>
> B.  excluding testimony of an extortion defense;
>
> C.  limiting complainant's cross-examination regarding why her mother
>     wanted her to drop the charges against petitioner;
>
> D.  refusing to allow petitioner to cross-examine the complainant about
>     her use of Prozac; and
>
> E.  limiting cross-examination of the complainant regarding her memory.

The trial court's evidentiary rulings are matters of state law which are not subject to re-exam-

ination by the federal courts.  It is not "the province of a federal habeas court to reexamine state-

court determinations on state-law questions.  In conducting habeas review, a federal court is limited

to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may grant habeas relief based on

an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitu-

tional right or renders the petitioner's trial fundamentally unfair."  *Gochicoa v. Johnson*, 118 F.3d 440,

446 (5th Cir. 1997).

In this instance, petitioner claims that certain evidentiary rulings of the trial court violated

his constitutional right to confront the witnesses presented against him.  "The Confrontation Clause

of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Criminal defendants receive two valuable protections from the Confrontation Clause – the right to physically face those who testify against them and the right to cross-examine those witnesses. *Coy v. Iowa*, 487 U.S. 1012, 1016-17 (1988). "[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405 (1965). "It is axiomatic that defense counsel should be permitted to expose to the jury facts relative to a witness' possible motivation to testify favorably for the prosecution or his potential bias for or against any party to the criminal proceeding." *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).

The Confrontation Clause does not, however, grant defense attorneys unbridled authority to cross-examine witnesses on whatever topic they or their clients deem suitable. Trial judges retain the discretion to impose reasonable limits on cross-examination consistent with the applicable rules of evidence.

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)) (emphasis in original).

In this case, petitioner's claims relate to limitations and restrictions on cross-examination of the complainant rather than physically facing those who testified against him. "A complaint that the trial court unduly restricted cross-examination of a state's witness is a mixed question of fact and law, and on federal habeas review is subject to harmless error analysis under *Brecht v. Abrahamson*[, 507 U.S. 619 (1993)]." *Rosales v. Cockrell*, 220 F. Supp. 2d 593, 625 (N.D. Tex. 2001), *aff'd* No. 01-11388, 2002 WL 31016510 (5th Cir. Aug. 16, 2002), and *cert. denied*, 539 U.S. 960 (2003). Consequently, petitioner is entitled to relief on these claims only if he shows that the trial court in fact violated his right to confrontation and that "there is more than a mere reasonable possibility that the [error] contributed to the verdict." *Id.* (citations and internal quotation marks omitted).

## A. Exclusion of Non-prosecution Affidavit

In Claim 2 and part of Claim 8J, petitioner contends that the trial court erred when it excluded the affidavit of non-prosecution signed by the complainant. He argues that such exclusion violates his right to cross-examine his accuser.

In Texas, "a prior statement is not admissible if it is confined to an opinion that the accused is not guilty or to other irrelevant matters." *Rummel v. State*, 509 S.W.2d 630, 634 (Tex. Crim. App. 1974). Nevertheless, an affidavit of non-prosecution properly executed by the complaining witness may be admissible in some circumstances. *See Williams v. State,* 652 S.W.2d 408, 409 (Tex. Crim. App. 1983) (*en banc*); *Jackson v. State,* 624 S.W.2d 306, 309 (Tex. App. – Dallas 1981, no pet.). When "the complainant was induced to sign the affidavit . . . the trial court is correct to exclude the affidavit from evidence." *DiMaggio v. State,* No. A14-91-00838-CR, 1992 WL 99568, at *3 (Tex. App. – Houston [14 Dist.] May 14, 1992). In such a case, "any probative value the affidavit might have is outweighed by its prejudicial effect." *Id.* (citing TEX. R. CRIM. EVID. 403).

32

In this instance, the trial court issued findings in response to petitioner's state writ, and found that it excluded the affidavit from evidence because the complainant did not sign the affidavit voluntarily. *See* S.H. Tr. at 164. There is evidence in the record which supports that finding. The complainant testified at the *sub rosa* hearing that she executed the affidavit at the urging of her mother because she "wanted to just forget it and get on with [her] life and just let it go." SF-IIB at 9. The trial court properly restricted the use of such affidavit at trial. The affidavit's exclusion did not violate petitioner's right to cross-examine the complainant. The Confrontation Clause does not give defendants any right to use an involuntarily-signed affidavit of non-prosecution to impeach or discredit the complainant.

By denying petitioner's state writ on the findings of the trial court, the Texas Court of Criminal Appeals adjudicated this claim on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on this claim.

**B.  Exclusion of Testimony Related to Extortion Defense**

In Claim 2, petitioner also contends that the trial court erred in excluding all testimony related to petitioner's theory that the complainant pressed charges against him in an effort to extort $1,000 from him. However, as amply demonstrated by the detailed background of the trial court's rulings, the trial court deferred ruling on whether petitioner could go into such testimony. Despite

such deferral, no such evidence was offered. Consequently, the Court finds no error by the trial court in this respect.

## C. Limiting Cross-examination of Complainant

In Claim 8F, petitioner complains that the trial court improperly limited cross-examination of the complainant regarding why her mother wanted her to drop the charges against him. He argues that the interjection of the trial court[14] improperly restricted cross-examination of the complainant. That interjection, however, took place during the *sub rosa* hearing and merely focused the questioning on matters material to the admissibility of the affidavit of non-prosecution. At no point during the complainant's testimony given in the presence of the jury did the trial court prevent defense counsel from asking the complainant about her mother's reasons for wanting her to drop the charges. *See* SF-IIA at 167 (showing that defense counsel had no questions for the witness at that time); SF-IIB at 28-88 (cross-examination after State rested); SF-III at 254-65 (rebuttal testimony after defense rested). The subject was simply not raised through testimony before the jury.

The record does not support a finding that the trial court restricted the cross-examination of the complainant regarding why her mother wanted her to drop the charges. The trial court merely directed that the questioning move on to something relevant to the issue of the *sub rosa* examination, namely the admissibility of the non-prosecution affidavit. The Court finds no error with the complained-of interjection of the trial court during the *sub rosa* hearing.

Moreover, even if the trial court erred in urging the questioning to other matters in the *sub rosa* hearing, such error created no reasonable possibility that the outcome of the trial would have

---

[14] The trial court stated: "What has that got to do with this? You're trying to determine whether or not you can get into the jury whether she signed the affidavit. What her mom was thinking isn't hardly going to resolve that issue. So let's move on."

changed. Such error was outside the presence of the jury, and no ruling of the trial court prevented

pursuit of that line of inquiry during trial testimony.

**D.   Cross-examination Regarding Prozac**

In Claim 8L, petitioner argues that the trial court violated his right to confront his accuser

when it ruled that her use of Prozac was irrelevant. He specifically complains about the following

series of questions by defense counsel, objections, and rulings:

Q   Is this the same doctor that prescribed Prozac for you?

A   No. He's a counselor. He's not a medical doctor.

Q   Who prescribed Prozac?

Prosecutor:  Your Honor, I'm going to object. It is irrelevant.

Court:  Sustained.

Q   Were you prescribed Prozac?

Prosecutor:  Objection, irrelevant.

Court:  Sustained.

SF-IIB at 71.

Petitioner suggests that the complainant's use of Prozac constitutes an impairment or disa-

bility which affects her credibility. He contends that such use could have impaired the complainant's

perception of the alleged offense. He argues that the evidentiary ruling prevented him from pre-

senting three defense theories: (1) the combined effect of alcohol and Prozac "muddled" her memory

to such an extent that her testimony was unreliable; (2) the combined effect of alcohol and Prozac

in conjunction with the complainant's failures to remember what she had told the jury the day before

showed that her testimony was unreliable; and (3) the use of Prozac "could have caused her to dream up this alleged offense or it was a drug and alcohol induced fantasy."

The Court finds that the trial court did not violate petitioner's right to confront his accuser by sustaining the two objections noted above.  The rulings of the court merely set reasonable limits on the testimony of the witness consistent with the rules of evidence.  Petitioner presented three theories for why testimony regarding Prozac was relevant to his case – each theory related to the **use** of Prozac.  The questioning, however, did not go to that subject.  The complainant could have used Prozac whether or not it had been prescribed it for her.  Any testimony regarding Prozac was only relevant to the extent the complainant used it and it impaired her perception of events.  Petitioner points to no ruling by the trial court that limited inquiry into the complainant's use of Prozac.  Because the trial court did not violate petitioner's right of confrontation by sustaining the two identified objections, this claim entitles petitioner to no habeas relief.

Furthermore, were the Court to find that the trial court unreasonably limited the cross-examination of the complainant related to Prozac, the claim would still fail.  There is no reasonable possibility that the trial court's rulings contributed to the verdict.  Petitioner speculates that he could have discredited the complainant's testimony by showing some reaction between the Prozac and alcohol that "muddled" her memory and caused her not to remember what precisely happened or caused some sort of drug-induced fantasy.  He also speculates that the use of Prozac may have caused the complainant to "dream up this alleged offense."  However, habeas relief is not available on mere speculation and conjecture.  Petitioner must show a reasonable possibility that the trial court's ruling altered the verdict.  He has not made such a showing.  He presents no offer of proof regarding what testimony would have been elicited regarding the complainant's use of Prozac.  He thus cannot show

that his defense was prejudiced. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding that court cannot grant habeas relief unless petitioner makes offer of proof as to the content of missing evidence or testimony).

## E.  Cross-examination Regarding Memory

In Claim 8M, petitioner argues that the trial court unreasonably limited cross-examination of the complainant with respect to her memory.  He specifically complains about the following series of questions by defense counsel and court directions.

Q   What time was your first class in the morning?

A   I don't remember.  Generally they start around 9:00.  I'm not sure.

Q   So Thursday is a school day.  Did you have class that day?

A   I don't remember.  I remember going to class.

Q   Do you understand you've never told him, I don't remember, to any of his questions?

Court: Mr. Whittier, that's argumentative.  If you have a question ask her, but let's not do that.

Q   Why are you telling me you don't remember all the time and you never told the State that?

Court: Excuse me.  Just a moment.  That's argumentative.  Don't ask those types of questions.  If you have a question to ask her, ask it.  Ask your next question.

SF-IIB at 86-87.

The trial court properly disallowed such questioning as argumentative.  The court did not violate petitioner's confrontation rights by insisting that defense counsel not argue with or badger the witness.  The trial court merely imposed a reasonable limitation on the questioning consistent with the rules of evidence.  This claim entitles petitioner to no habeas relief.

## VIII.  TRIAL COURT ERROR – DUE PROCESS

In Claim 8, petitioner also alleges that errors of the trial court deprived him of his due process right to a fair trial in the following instances:

A.  twice during voir dire (Claims 8D and 8E);

B.  several times with respect to the *sub rosa* hearing (Claims 8H, 8I, 8J, and 8K);

C.  once during questioning of a defense witness (Claim 8N); and

D.  several times with respect to instructing the jury (Claims 8A, 8B, 8C, and 8G).

As stated in the preceding section, evidentiary rulings are matters of state law that are not subject to re-examination by the federal courts.  Rulings made during a state trial regarding the instructions to be given to the jury are likewise not subject to re-examination by this Court.  In habeas actions, federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  If an erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief on such error when the error "renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  A fundamentally unfair trial violates the Fourteenth Amendment right to due process. *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  A trial is deemed "unfair" when it has been "largely robbed of dignity due a rational process." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (citation omitted).

A petitioner is thus entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'"  507 U.S. 619, 637-38 (citation omitted).

38

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant
> to habeas relief unless there is more than a mere reasonable possibility that it contrib-
> uted to the verdict. It must have had a substantial effect or influence in determining
> the verdict. We recognize, however, that if our minds are "in virtual equipoise as to
> the harmlessness," under the *Brecht* standard, of the error, then we must conclude
> that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017,

1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must

show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

## A.  Alleged Errors During Voir Dire

Petitioner claims that the trial court committed two errors during voir dire. Specifically, he

alleges in Claim 8D that the court erred by referring to the O.J. Simpson case. He further alleges in

Claim 8E that the court erred when its voir dire questioning forced the jurors to commit themselves

to how they would consider certain trial facts and testimony.

### 1.  Reference to Simpson Case

Petitioner asserts in Claim 8D that the trial court made prejudicial and inflammatory remarks

about the O.J. Simpson case during voir dire. The trial court made the following remarks:

> You read about what things go on in a courtroom. You read books, you know, novels,
> what have you. You look at shows on TV. And those things become your basis of
> knowledge for what goes on in the courtroom. The only problem is very little of it is
> true. And certainly almost never do you get it complete. *I guess the only time you ever*
> *get it completely is O.J. Simpson. And that's California. I haven't figured that out yet. So*
> *you don't let that be any basis for anything that you think you know about criminal justice.*

SF-I at 15-16 (complained-of remarks in italics).

> Does anybody here feel that they could not assess that minimum or that maximum,
> [sentence] for whatever reason, even though the evidence and the law would warrant
> it? So I'm taking it that everybody's fine with that range of punishment. Is that
> where we are?

39

. . . Y'all don't know any of us. You don't know one another. Okay? That's not an atmosphere that's conducive for you raising your hands and asking questions. We know it. Okay? A lot of people say, I ain't going to say anything because I think I'm going to sound stupid. I've done my fair share of that in my life. And if you do, so what? Okay? The other side of it is, I'll be perfectly honest. I think we'll all agree. Probably 98 percent of what y'all ask are very good questions. Sometimes helps us refocus in a way that we hadn't thought of that explains it even better. Okay?

If you've got a problem or a question about anything I've gone over, you need to raise your hands and ask. *This ain't California. You don't get over there and have a question, we stop the trial, have a big investigation, and you go home.* Doesn't work that way. You've got a problem, you need to raise your hands now and let me know. You've got any questions about anything I've gone over, you need to let me know. If you've got any questions about anything that I did not go over that you think would help you understand better or do a better job, you need to let me know.

*Id.* at 48-49 (complained-of remarks in italics).

Court: . . . So the bottom line is – whether it's you or anybody else, the bottom line is if a person in a sexual assault case came and testified to all the elements of the offense and if you believed that person beyond a reasonable doubt, can you and will you return a verdict of guilty under those circumstances?

Juror: If there was evidence to support it, yes.

Court: Well, the evidence may be that person's testimony. Okay? *Don't make this more – don't make this a TV deal.* Okay?

Juror: I'm not.

*Id.* at 61 (complained-of remarks in italics). When considering petitioner's state habeas application, the trial court found that the remarks were its "way of explaining to the jury they will not see everything that happens in the court room as some rulings are made out of the presence of the jury." S.H. Tr. at 163.

By placing the alleged improper remarks in their proper context it becomes readily apparent that the trial court did not err in referring to the Simpson case or making the complained-of remarks. The trial court was merely explaining to the jury that it should not be influenced by any outside

40

sources, such as television, during the proceedings. Such practice is not error. Consequently, petitioner is entitled to no federal habeas relief on this claim.

In addition, petitioner would be entitled to no federal habeas relief on this claim even were the Court to find that the trial court erred in making the remarks. On the facts of this case, there is no reasonable possibility that such error contributed to the verdict. The trial court's remarks had no substantial or injurious effect or influence in determining the verdict. Accordingly, any error in making such remarks is harmless within the meaning of *Brecht*.

### 2. Forcing Jurors to Commit

Petitioner also asserts in Claim 8E that the trial court erred in forcing jurors during voir dire questioning to commit to how they would consider certain trial facts and testimony. Specifically, petitioner complains of the following questions by the trial court:

> a. "[T]he bottom line is if a person in a sexual assault case came and testified to all the elements of the offense and if you believed that person beyond a reasonable doubt, can you and will you return a verdict of guilty under those circumstances?"

> b. "So it gets down to if that person testifies sufficiently to prove all of the allegations in the indictment beyond a reasonable doubt, can you and will you return a verdict of guilt under those circumstances?"

> c. "Listen carefully to what she's saying and how I've said it because it's real important. If you believe the witness beyond a reasonable doubt, can you and will you return a verdict of guilty under those circumstances?"

SF-I at 61, 62, 65. When considering petitioner's state habeas application, the trial court found that it did not commit jurors to any facts, but was merely explaining the law to the jury. S.H. Tr. at 164.

Considering these questions in the context of the voir dire questioning as a whole, it is clear that the trial court was attempting to determine whether the potential jurors could follow the law.

41

It is not error for the trial court to make that determination.  The trial court did not error in asking the complained-of questions.

Because the above questions do not constitute error on the part of the trial court this claim fails to entitle petitioner to any federal habeas relief.

## B.  Alleged Errors With Respect to *Sub Rosa* Hearing

In Claims 8H, 8I, 8J, and 8K, petitioner alleges various errors of the trial court related to the *sub rosa* hearing conducted by the trial court.  Specifically, he claims the trial court violated his due process rights when it (1) refused to admit evidence that the complainant had extorted $1,000 from petitioner in exchange for his freedom (Claim 8H); (2) interfered with his attorney's ability to make independent decisions (Claim 8I); (3) limited impeachment by placing affidavit of non-prosecution in abeyance (Claim 8J); and (4) prevented petitioner from presenting his own witnesses to establish a defense (Claim 8K).

### 1.  *Refusal to Admit Evidence Related to Exchange of $1,000*

In Claim 8H, petitioner argues that the trial court abused its discretion when it refused to admit evidence that the complainant had extorted $1,000 from petitioner in exchange for dropping the charges against him.  He claims that conflicting testimony given at the *sub rosa* hearing by the complainant and her sister supports a defense that the complainant sought to extort money from him.  He thus argues that the trial court improperly refused to admit evidence of such defense.

Petitioner misconstrues what happened at the *sub rosa* hearing.  Although the trial court found the affidavit of non-prosecution signed by the complainant inadmissible, SF-IIB at 21, it specifically deferred ruling on whether the defense could go into whether the complainant asked for $1,000 in exchange for trying to drop the charges, *id.* at 24-27.  The subject was not raised during

42

the trial testimony of the complainant or her sister. The trial court thus did not refuse to admit evidence related to petitioner's extortion defense.

Because the trial court made no ruling on the admissibility of testimony related to petitioner's extortion defense it committed no error in refusing to admit such testimony. In the absence of trial court error, there can be no due process violation founded on this claim. This claim entitles petitioner to no habeas relief.

### 2. Interfering With Counsel's Decisions

In Claim 8I, petitioner argues that the trial court erred when it interfered with his attorney's ability to make independent decisions regarding petitioner's defense. Petitioner specifically points to the *sub rosa* hearing where his attorney divulged defensive strategy and tactics. He contends that the trial court instructed defense counsel to pursue testimony related to prior relationships instead of exposing the complainant's extortion plot to the jury.

Viewing the *sub rosa* hearing as a whole, the Court finds no error by the trial court relating to counsel's ability to make independent decisions. *See* SF-IIB 6-27. Although defense counsel indeed divulged certain strategies and tactics during that hearing, he apparently did so in an attempt to convince the trial court to allow inquiry into the $1,000 given to the complainant and the circumstances surrounding the exchange of such cash. *See id.* at 21-27. Although the trial court may not have been entirely convinced that such inquiry was proper, it ultimately held the issue in abeyance. *Id.* at 27. Defense counsel thus succeeded in obtaining a deferred ruling on the issue regarding the $1,000 until further testimony was developed. The trial court did not force defense counsel to pursue a certain defense to the exclusion of another defense.

43

Because the trial court did not commit error during its discussions with defense counsel during the *sub rosa* hearing, the trial court did not violate petitioner's due process rights. This claim entitles petitioner to no habeas relief.

### 3. Limiting Impeachment Evidence

In Claim 8J, petitioner argues that the trial court improperly limited the avenues through which he could impeach the complainant. He contends that, although he had a defensive theory of impeachment relating to extortion by the complainant, the trial court improperly restricted pursuit of such theory and excluded the affidavit of non-prosecution. He asserts that the affidavit was freely given despite the trial court's contrary ruling, and that it was relevant to the complainant's credibility. He maintains that the trial court erred when it stated: "Well, why don't you bring your witnesses on and develop some stuff other than that, which is whatever their prior relationship is and some other things. Let me get a sense of how it might fit into it. And then I will let you know." He contends that such statement restricted the defense in the planning of its case. He submits that he has a right to impeach the complainant through cross-examination and other witnesses. He argues that the trial court may not exercise its discretion in a manner which frustrates his right to confront and cross-examine the witnesses presented against him.

As already discussed in connection with petitioner's Confrontation Clause claims, the trial court did not infringe upon defense counsel's ability to make independent decisions regarding petitioner's case. The trial court properly sought sufficient information outside the presence of the jury to make an informed evidentiary ruling. Defense counsel succeeded in convincing the trial court to defer ruling on the admissibility of evidence related to petitioner's extortion theory pending additional development of the issues by counsel through trial testimony before the jury. The Court

does not find that the trial court restricted the defense in the planning of its case in violation of the Constitution, laws, or treaties of the United States.

Although the trial court excluded the affidavit from evidence, it deferred ruling on the related issue of whether the defense could inquire into reasons behind the complainant's receipt of $1,000. *Id.* at 21, 27. The Court has already concluded that the trial court properly excluded the affidavit. It has also found that the trial court placed no restriction on evidence related to the $1,000. The trial court did not violate the due process rights of petitioner by limiting the avenues through which he could impeach the complainant. Petitioner's trial was not robbed of dignity due to the exclusion of the affidavit of non-prosecution. He is entitled to no habeas relief on this claim.

### 4. Denial of Right to Present a Defense

In Claim 8K, petitioner argues that the trial court never informed the defense as to when it could use the affidavit of non-prosecution or evidence of extortion. He contends that such failure denied him his right to present a defense. He basically claims that the trial court's rulings during the *sub rosa* hearing denied him the opportunity to present his extortion defense.

The Court finds no error in the failure of the trial court to inform the defense as to when it could use the affidavit of non-prosecution and evidence of extortion. The trial court specifically found the affidavit not admissible. *See* SF-IIB at 21. It deferred ruling on the issue of the admissibility of testimony related to petitioner's extortion defense. *Id.* at 27. Such rulings should have informed the defense that the affidavit was inadmissible evidence, and that the court would revisit the extortion issue, if and when, it arose after further development of the evidence. Because the trial court did not err in the information provided to the defense with respect to use of the affidavit or

45

evidence of extortion, this claim entitles petitioner to no habeas relief. The trial court did not deny

petitioner the opportunity to present his extortion defense.

## C. Alleged Evidentiary Error During Trial

In Claim 8N, petitioner alleges that the trial court erroneously limited questioning of the

complainant's sister with respect to the complainant's hostile attitude toward petitioner and other

family members. During testimony from the complainant's sister, defense counsel tried to show

conflict between the complainant and other family members, including the petitioner. SF-III at 215-

17. Petitioner specifically complains about the following ruling in response to some of the

questioning:

> Q   Was [the way complainant cared for her infant son] a source of conflict between
> you and her?
>
> Prosecutor: Objection, irrelevant.
>
> Court: Sustained.
>
> Defense Counsel: Judge, the relationship between the parties is important. The
> source of conflict would shed light on their differences.
>
> Court: The objection is sustained. Let's move on.

*Id.* at 216-17.

The trial court had previously sustained an objection by the State regarding testimony about

"any conflict except between the defendant and the complainant," and it had permitted the sister

to testify about conflicts between the petitioner and the complainant. *Id.* at 216-22. The Court sees

no error in sustaining the State's objection. Any potential conflicts between the complainant and

her sister would have no relevancy to the petitioner's guilt or innocence. Such conflict, furthermore,

would provide no basis to impeach the testimony of the complainant or any State witness. Further-

46

more, even if the trial court did err, such error did not render petitioner's trial fundamentally unfair. Consequently, this claim entitles petitioner to no habeas relief.

## D. Alleged Errors Regarding Jury Instructions

In Claims 8A, 8B, 8C, and 8G, petitioner argues that the trial court erred in (1) not giving mandatory jury instructions required by TEX. CODE CRIM. PROC. ANN. arts. 38.07 and 38.17 (Claim 8A); (2) denying a request for a lesser-included-offense instruction (Claim 8B); (3) erroneously instructing the jury on the burden of proof (Claim 8C); and (4) not instructing the jury on a defensive theory that petitioner was "set up" (Claim 8G).

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "A state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden." *Reddix v. Thigpen*, 805 F.2d 506, 512 (5th Cir. 1986). "Before a federal court may overturn a conviction resulting from a state trial" on a challenge to the instructions given to the jury, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146; *Reddix*, 805 F.2d at 512. That an instruction is "allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72. "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)). On habeas review, federal courts must only determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction

47

violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). Thus, the "harmless-error analysis [applies] to cases involving improper instructions." *See Neder v. United States*, 527 U.S. 1, 9 (1999).

### 1. *Mandatory Jury Instructions*

Petitioner argues that TEX. CODE CRIM. PROC. ANN. art. 38.07 requires the trial court to instruct the jury regarding the weight to be given uncorroborated testimony from victims in sexual assault cases. He further argues that Article 38.17 also requires an instruction for uncorroborated testimony.

Article 38.07 of itself requires no jury instruction. Article 38.17 requires a jury instruction in connection with Article 38.07 only when Article 38.07 requires a corroborative witness. As already discussed in the section addressing petitioner's outcry claim (Claim 5), Article 38.07 permits petitioner's conviction on the uncorroborated testimony of the victim because she satisfied the outcry requirement by reporting the offense to the police within one year of the offense. Otherwise, Article 38.17 requires a jury instruction only in cases where the law requires a corroborative witness or circumstances to authorize the conviction. The law does not require a corroborative witness or circumstances to authorize petitioner's conviction for sexual assault in this case. Thus, the trial court did not err when it failed to instruct the jury in accordance with Article 38.07 or Article 38.17. In the absence of an error by the trial court, this claim entitles petitioner to no habeas relief.

### 2. *Lesser Included Offense*

Petitioner contends that the trial court erred in denying his request for an instruction on assault as that offense is set out in TEX. PENAL CODE ANN. § 22.01(a)(3). The Fifth Circuit has repeatedly held that there is no federal constitutional right to an instruction on a lesser included

offense in a noncapital state trial. *See, e.g., Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988). The trial court found that petitioner was not entitled to a lesser-included-offense instruction because no evidence existed that showed that he was only guilty of assault. S.H. Tr. at 163. By denying the state writ on the findings of the trial court, the Texas Court of Criminal Appeals agreed that the evidence did not support an instruction on assault. "Absent a violation of the Constitution, we defer to the state court interpretation of its law for whether a lesser-included-offense instruction is warranted." *Creel*, 162 F.3d at 390-91.

Under Texas law, simple assault can be a lesser-included offense of sexual assault. *See Smith v. State*, 135 S.W.3d 259, 266 (Tex. App. – Texarkana, 2004). Nevertheless, in Texas, a defendant is entitled to a charge on a lesser included offense if evidence exists "in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). As previously discussed, a rational jury could convict petitioner of sexual assault as alleged in the indictment. Such a jury thus could not find that, if petitioner was guilty, he was guilty only of assault. Consequently, it does not appear that the trial court erred in failing to instruct the jury on the lesser-included offense of assault. This claim provides no basis for federal habeas relief.

### 3. *Relieving State of Burden of Proof*

Petitioner also claims that the trial court erroneously instructed the jury by relieving the State of its burden to prove every element of the offense. He breaks this claim into three components: (a) shifting burden of persuasion to him on element of intent; (b) failing to define all elements of the offense; and (c) failing to instruct the jury with respect to consent or lack thereof.

### a. Shifting Burden of Persuasion

Petitioner asserts that the trial court erred when it instructed the jury on the intent element of sexual assault. The court instructed the jury as follows:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TR at 65. Petitioner contends that such jury charge unconstitutionally sets forth a mandatory presumption that a person intends the ordinary consequences of his voluntary acts. Relying on *Sullivan v. Louisiana*, 508 U.S. 275 (1993), he argues that such charge relieves the State of its burden to prove all elements of the offense.

In *Sullivan*, the Supreme Court stated that a "mandatory presumption – for example, the presumption that a person intends the ordinary consequences of his voluntary acts – violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense." 508 U.S. at 280. However, the jury instructions at issue here do not create such a mandatory presumption. Under Texas law, a person commits sexual assault when he "intentionally or knowingly . . . causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent." *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon 1994). The trial court merely defined what is meant when the statute speaks in terms of intentionally or knowingly. Such instruction is consistent with TEX. PENAL CODE ANN. § 6.03(a) and (b) (Vernon 1994) (defining intentional and knowing).

Furthermore, the trial court instructed the jury:

> In all criminal cases the burden of proof is on the State.
>
> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. . . .
>
> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

TR at 67. The trial court's charge merely defines what is meant by "intentionally or knowingly", and does not shift or alter the burden of persuasion or proof. As set forth in the jury charge, the State carried the burden of proof at all times. The Court finds no error of the trial court with respect to how the court defined "intentionally" and "knowingly" in its jury charge. Consequently, there is no error to support habeas relief on this claim.

### b. Failing to Define All Elements of the Offense

Petitioner also complains that the trial court failed to define what was meant by "without consent" in the jury charge. The charge indeed fails to define "without consent." *See* TR at 65-69. Nevertheless, the charge specifically required the jury to find that petitioner penetrated the complainant's sexual organ without her consent in order to find him guilty. *Id.* at 66-67. Although the trial court may have erred by not providing a statutory definition of "without consent" consistent with TEX. PENAL CODE ANN. § 22.011(b), such error entitles petitioner to federal habeas relief only if it rendered his trial fundamentally unfair. To determine the degree of harm to petitioner, if any, the Court looks at the totality of the circumstances. It examines the jury charge in its entirety and any other relevant information, including the evidence of record and argument of counsel.

In this instance, § 22.011(b)(5)[15] appears to be the most appropriate statutory basis for deter-

---

[15] Petitioner also mentions § 22.011(b)(3) as a possible definition for lack of consent. It provides that a sexual assault is non-consensual when "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist." Although § 22.011(b)(5) appears to better fit the facts of this case, the analysis would be similar under subparagraph (b)(3).

mining the meaning of "without consent". It provides that a sexual assault is "without the consent of the other person if . . . the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." The complainant specifically testified that she did not consent to petitioner's finger-penetration. *See* SF-IIA at 146. She specifically stated that she awoke to find petitioner's finger penetrating her vagina. *Id.* at 142-46; SF-IIB at 56-58. The State's closing argument reflects that petitioner's actions were necessarily non-consensual because such actions awoke the complainant from her sleep. SF-III at 295. As both sides argued in closing, furthermore, this case boils down to whether the jury believed the complainant. *Id.* at 282-302. If the jury believed the complainant, then the verdict would be guilty. On the other hand, if the jury found the complainant's testimony unbelievable or incredible, then they would acquit petitioner.

The facts of this case fall squarely within § 22.011(b)(5). The complainant testified that she was asleep when petitioner sexually assaulted her. She testified that, because she "had been asleep" she "wasn't sure what had just happened" upon awakening. SF-IIB at 558. Such testimony shows that she was unaware of the sexual assault. Furthermore, a reasonable trier of fact could find from the facts presented by the complainant that petitioner knew that the complainant was asleep and would thus be unaware of the sexual assault. On the facts of this case, the Court finds no harm from the failure of the trial court to define "without consent." There is no reasonable possibility that the error contributed to the verdict. There is no reasonable possibility that had the trial court instructed the jury as to the meaning of without consent in accordance to § 22.011(b) the verdict would have changed. Because this error in instructing the jury had no substantial or injurious effect or influence in determining petitioner's guilt, the Court finds the error harmless within the meaning of *Brecht*.

### c. *Failing to Instruct Jury With Respect to Consent*

In an attempt to re-characterize the preceding argument, petitioner also argues that the trial court erred in failing to include the definitions for lack of consent codified at TEX. PENAL CODE ANN. § 22.011(b)(3) and (5). He argues that, because neither the jury charge nor the indictment against him defines "without consent", his conviction is unauthorized and thus reversible. This claim fails for the same reasons stated in the preceding section.

### 4. *Refusing to Instruct Jury on "Set Up" Defense*

Petitioner also claims that the trial court erred when it refused to instruct the jury on his defensive theory that he was "set up" on false charges so as to extort $1,000 from him in exchange for his freedom. The trial court found that petitioner was not entitled to such an instruction because the jury had to find each of the elements of the offense before convicting him. S.H. Tr. at 163. By denying the state writ on the findings of the trial court, the Texas Court of Criminal Appeals agreed that such an instruction was unwarranted. Unless there is a Constitutional violation, the federal courts defer to the state court interpretation of its law on matters related to whether a requested instruction is warranted. *Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir. 1998). Refusing to instruct the jury on a defensive theory related to the credibility of the complaining witness does not violate the United States Constitution. Accordingly, this claim provides no basis for federal habeas relief.

## IX.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his ninth claim, petitioner alleges that his trial counsel was ineffective in that he:

A.  failed to investigate the case;
B.  failed to use a prior inconsistent statement of complainant's mother;
C.  failed to use prior inconsistent testimony of complainant;

53

    D.   failed to object that the testimony did not meet statutory "outcry" requirements;

    E.   failed to require the state to select one witness as the outcry witness;

    F.   failed to interview the victim before trial;

    G.   failed to object to the prosecutor calling petitioner "this guilty person";

    I.[16]  waived the right to an opening statement;

    J.   failed to request a mistrial after a sustained objection;

    K.   acquiesced to waiver of confrontation of the victim;

    L.   failed to perfect an objection regarding the court's limitation of confrontation;

    M.  failed to request a jury instruction related to the outcry requirements;

    N.  failed to request a jury charge that applied law to facts;

    O.  failed to request a jury charge on a lesser included offense;

    P.   failed to request any jury instructions;

    Q.  failed to object to the prosecutor's vouching for witnesses;

    R.   failed to object to the prosecution's use of an extraneous offense or request a limiting instruction; and

    S.   failed to object to the prosecutor's inflammatory closing argument.

In his fourth claim, petitioner further alleges that he received ineffective assistance from his appellate counsel when counsel failed to raise the following claims on appeal:

    A.   unrecorded bench conferences;

    B.   missing items from appellate record;

    C.   improper voir dire questions by the prosecutor;

    D.   service of disqualified jurors; and

    E.   "outcry" witness does not meet statutory requirements.

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial. U.S. Const., art. VI. Criminal defendants, furthermore, have a constitutional right to effective assistance of counsel in their first appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963). To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to

---

[16] Petitioner skipped "h" in his brief. For ease of reference, the Court keeps the lettering of petitioner.

establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. "A claim of ineffective assistance based on the failure to argue an issue on appeal is governed by the familiar two-part *Strickland* test." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). *Strickland* likewise applies to other claims of ineffective assistance of appellate and trial counsel. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). To show prejudice, when an attorney has "failed to adequately brief an issue on direct appeal, [petitioner] must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue." *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). Petitioner "must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in

55

assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. To establish prejudice, they must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A.  Ineffective Assistance of Trial Counsel

As more fully discussed below, petitioner makes numerous claims of ineffective assistance of trial counsel.

### 1.  *Claims related to Outcry Witness*

Claims 9A, 9D, 9E, and 9M relate to outcry in various respects. In Claim 9A, he contends that had counsel properly investigated the case he would have been aware that the complainant's mother would testify and that the mother's testimony did not meet the requirements of TEX. CODE CRIM. PROC. ANN. art. 38.07. In Claim 9D, he argues that counsel rendered ineffective assistance by not objecting to the mother's testimony because it failed to meet those requirements. In Claim 9E, he argues that counsel was ineffective for not objecting and asking the State to elect which witness was going to be its outcry witness. He contends that Article 38.07 contemplates only one outcry witness because it speaks in terms of the singular "person". In Claim 9M, he argues that his

attorney rendered ineffective assistance by not requesting that the jury be instructed consistent with Articles 38.07 and 38.17.

As set forth in this Court's discussion of petitioner's fifth ground for relief, the relevant version of Article 38.07 provides that a conviction for sexual assault "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." This statute does not compel the State to select any individual to be the outcry witness.[17] The statute is clear and unambiguous. If the victim informed ANY PERSON other than the defendant of offense within one year of the offense, then a sexual assault conviction is supportable solely on the uncorroborated testimony of the victim.

From the trial testimony, it appears that the complainant told her mother about the offense within one year of its occurrence. Regardless of the ambiguity of the mother's testimony regarding notice of sexual advances, whether the mother constitutes a proper outcry witness is ultimately immaterial because Officer Talley testified that the complainant reported the sexual assault to him within one year of its occurrence. By reporting the offense to Officer Talley, the complainant made the requisite outcry contemplated by Article 38.07. Thus, the alleged failure to investigate resulted in no prejudice to petitioner. The requirements of Article 38.07 were satisfied with or without the investigation that petitioner now claims was lacking. Claim 9A entitles petitioner to no habeas relief.

For similar reasons, the Court finds no prejudice from the failure of counsel to object to the mother's testimony. The requirements of Article 38.07 were ultimately met even if the mother's

---

[17] In petitioner's "Additional Authorities in Support" petitioner relies upon Texas cases which in turn rely upon TEX. CODE CRIM. PROC. ANN. art. 38.072. That statute, however, has no applicability to adult sexual assault victims. The cited cases thus have no persuasive value on this issue.

testimony does not satisfy such requirements.  In addition, the failure to satisfy such requirements provides no basis to object to testimony of a witness.  Attorneys thus do not render deficient representation by failing to object to testimony on the basis that such testimony does not satisfy the requirements of Article 38.07.  The failure to satisfy those requirements simply invokes a mandatory instruction that the jury render a verdict of acquittal.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.17 (Vernon 1979).  For these reasons, Claim 9D entitles petitioner to no habeas relief.

Claim 9E likewise entitles petitioner to no habeas relief because the statute does not require the State to elect a particular witness to be its outcry witness.  Petitioner's attorney thus had no basis to object to the failure to make such an election.  Attorneys do not render deficient performance when they fail to assert meritless objections.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).  They also do not render deficient performance when they fail to make an unsupportable request that the State elect one witness to be its outcry witness.

With respect to Claim 9M that counsel rendered ineffective assistance by failing to request jury instructions consistent with Articles 38.07 and 38.17, the Court has already concluded that the facts of this case warranted no instructions under those statutes.  Consequently, counsel was not deficient in failing to request such instructions.

Accordingly, petitioner's outcry claims entitle him to no habeas relief.

### 2. Failures to Use Inconsistencies to Impeach Complainant's Mother

In Claim 9B, petitioner claims that his attorney rendered ineffective assistance when he did not use a prior inconsistent statement made to police officers to impeach his wife (the complainant's mother).  In Claim 9C, he claims that his attorney rendered ineffective assistance when he did not use inconsistent testimony from the complainant to impeach his wife.

58

With respect to Claim 9B, petitioner claims that his wife told the police that she did not believe the complainant, hired a defense attorney to represent her husband, and was going to testify for the defense. However, he presents no statement of his wife to support such claim. Conclusory claims of ineffective assistance of counsel do not suffice to obtain federal habeas relief. Because petitioner has not provided the statement that his wife allegedly made to police officers or any sworn affidavit from his wife or the police officer that sets forth what she told the police officer, the Court finds no deficiency of counsel in his failure to impeach the wife with such statement.

With respect to Claim 9C, petitioner argues that his attorney should have impeached his wife with prior testimony from the complainant when his wife stated that no one had spoken to her about changing her testimony in the case. He submits that his attorney should have asked his wife: (1) what the complainant meant when she indicated that her mother and defense counsel were "trying to get everything together"; (2) why the wife tried to make peace with the complainant by giving her $1,000; and (3) why the complainant stated that she and her mother were at odds. Assuming that such questions would constitute proper cross-examination, petitioner has not shown that the answers to such questions would impeach his wife to such an extent that there would be a reasonable probability that the outcome of his trial would have differed. He has not shown how his wife would have answered such questions. Just as importantly, he has not shown that such answers would have created any reasonable probability that the jury would not have convicted him. Without a showing of prejudice, this claim entitles petitioner to no habeas relief.

### 3. Failure to Interview Witness and Claims Related to Confrontation of Witnesses

In Claim 9F, petitioner asserts that his attorney rendered ineffective assistance by not interviewing the complainant prior to trial. He contends that his attorney merely relied upon the prose-

59

cutor's investigative file. He argues that the failure to interview the complainant relates to his attorney's failure to develop evidence regarding petitioner's defensive theories that he was a victim of an extortion and blackmail scheme orchestrated by the complainant.

In Claim 9K, petitioner claims that his attorney rendered ineffective assistance by acquiescing to a waiver of petitioner's right to confront the complainant with respect to the affidavit of non-prosecution and the defensive theory that petitioner had been "set up" on false charges and subjected to extortion for $1,000. Petitioner argues that he never consented to any waiver of this right to confront the complainant with such evidence. He contends that the errors of counsel prevented him from confronting the complainant with the affidavit and from pursuing his extortion defense before the trier of fact.

Counsel did not render deficient performance with respect to the affidavit of non-prosecution. As already found by this Court, the Confrontation Clause does not give defendants any right to use an involuntarily-signed affidavit of non-prosecution to impeach or discredit the complainant. The trial court properly excluded such affidavit under state law. To the extent Claims 9F and 9K relate to the affidavit, the claims fail for any lack of deficiency of counsel.

To the extent Claims 9F and 9K relate to petitioner's extortion defense, the Court assumes for purposes of this motion only that counsel was deficient and proceeds to the prejudice prong of petitioner's ineffective-assistance claims. To succeed, petitioner must show that he was prejudiced by the alleged deficiencies of counsel. In other words, he must show a reasonable probability that, but for the errors of counsel, the outcome of his trial would have been different. As shown below, petitioner has not made that showing.

60

This case boiled down to the credibility of the complainant versus the credibility of defense witnesses. The complainant testified that petitioner sexually assaulted her at approximately 7:00 a.m. on September 7, 1995. Her mother (petitioner's wife) testified that the complainant told her on September 8, 1995, that petitioner had made "sexual advances" toward the complainant. She further testified that petitioner apologized to her about his conduct towards the complainant. In addition, testimony established that the complainant reported a sexual assault to the Seagoville Police Department in September 1995. Although petitioner presented four witnesses (petitioner's friend, two sons, and stepdaughter (sister to the complainant)) who testified that petitioner was nowhere near the complainant at the time of the alleged offense, the jury chose to believe the complainant based upon the evidence presented at trial. By its verdict, it is clear that the jury did not believe the alibi defense. It is also clear that the jury did not believe that the complainant fabricated the allegations against petitioner because of any animosity or conflict between them.

To show prejudice in light of the evidence presented at trial, petitioner must show that but for the alleged errors of counsel, a reasonable probability existed that he would have been able to sufficiently impeach the complainant such that the jury would not have convicted him. The Court finds no such reasonable probability. Despite testimony from four witnesses that petitioner was nowhere near the complainant when the offense allegedly occurred, the jury chose to believe the complainant's version of events and rejected petitioner's revenge theory. Petitioner has shown no reasonable probability that evidence regarding his extortion or blackmail theories would have altered the jury's credibility findings to such an extent that the jury would not have convicted him.

As shown by the testimony given at the *sub rosa* hearing, the extortion theory depended upon the credibility of the complainant's sister versus the complainant herself. SF-IIB 4-27. The com-

61

plainant therein admitted that her mother gave her $1,000, but denied that she received the money in exchange for signing the affidavit of non-prosecution. *Id.* at 10. The complainant testified that her mother was trying to make peace between the complainant, her mother, and "the other kids." *Id.* The complainant's sister testified at the *sub rosa* hearing that during a conversation between herself, her mother, and the complainant, her sister stated that "[i]f they would giver her $1,000, she would go down and drop the charges." *Id.* at 15. The complainant's sister also testified that her "mother said she would talk to [petitioner] about it and see what he wanted to do." *Id.* The sister further testified that her mother was not pressuring the complainant and told the complainant "that whatever she wanted to do, she (the mother) would stand by her." *Id.* at 16.

Nothing in the *sub rosa* testimony shows a reasonable probability that the jury's credibility findings would have differed had counsel pursued petitioner's extortion or blackmail theories. Petitioner has shown no reason to believe that the jury would have believed the complainant's sister rather than the complainant with respect to these theories. Furthermore, the testimony of the complainant's sister does not go to the crucial issue, *i.e.*, whether or not the sexual assault occurred. Even if the complainant demanded $1,000 to drop the charges, such demand does not mean that the assault did not happen. Such a demand does not mean that she fabricated her allegations merely to extort money.

For all of these reasons, petitioner has shown no prejudice from his attorney's failure to present his extortion defense to the jury or to interview the complainant prior to trial so as to develop that defense. The Court finds no reasonable probability that such defense would have altered the

credibility findings of the jury. Consequently, it finds there is no reasonable probability that such defense would have altered the outcome of trial.[18]

### 4. Failure to Perfect an Objection

In Claim 9L, petitioner claims his attorney rendered ineffective assistance by failing to perfect an objection relating to the affidavit of non-prosecution and the extortion theory. The failure to perfect the objection caused the court of appeals to not consider petitioner's appellate claims that the trial court improperly limited the complainant's cross-examination with respect to the affidavit and a $1,000 payment she allegedly solicited in exchange for dropping the charges against petitioner. See Braswell v. State, No. 05-96-01275-CR, 1998 WL 420316, at *4-5 (Tex. App. – Dallas July 28, 1998, pet. ref'd).

The failure to perfect an objection can constitute ineffective assistance of counsel. See McKinney v. Estelle, 657 F.2d 740, 744 n.3 (5th Cir. 1981). The court of appeals found that counsel had failed to preserve alleged errors related to the trial court's rulings. See Braswell, 1998 WL 420316, at *4-5. The court of appeals found that "counsel expressly acquiesced to the trial court's ruling excluding examination about the affidavit of nonprosecution." Id. at *4. With respect to the issue of the $1,000 payment, counsel failed to preserve error "[b]y failing to press his objection until he received a ruling and never attempting to place the testimony before the jury." Id. While the failure to preserve alleged error does not necessarily equate to deficient representation, the Court presumes for purposes of these findings that counsel rendered deficient representation by failing to

---

[18] To the extent petitioner claims that his attorney rendered ineffective assistance by not requiring the trial court to make a definite ruling regarding the admissibility of evidence relating to the extortion defense, such claim also fails for lack of prejudice. Even assuming the trial court had allowed the evidence, petitioner has not shown that it would have created a reasonable probability of a different trial outcome for the reasons previously stated.

preserve the errors for appellate review.  The Court thus must determine whether petitioner has shown prejudice from the alleged deficiencies of counsel.

To show prejudice for counsel's failure to perfect his objections to the exclusion of evidence related to the affidavit of non-prosecution and $1,000 payment, petitioner must show a reasonable probability that, but for the failures to perfect those objections, the result of the proceedings would have been different.  The deficiencies must undermine confidence in the outcome.

In this instance, petitioner has not met his burden to show that counsel's failure to perfect his objections created a reasonable probability that the result of trial or appeal would have been different.  Had counsel re-urged admission of the affidavit, the trial court would issued a ruling.  As previously discussed, the trial court properly excluded the affidavit under state law.  Petitioner has pointed to no evidence in the record to support a reasonable probability that the trial court would have altered its ruling had counsel continued to press the matter.  Petitioner has also shown no reasonable probability that the outcome of his appeal would have differed had counsel properly preserved the alleged trial court error regarding the exclusion of the affidavit.  He has shown no reasonable probability that the court of appeals would have overturned the conviction on that evidentiary ruling of the trial court.

Regarding the $1,000 payment, the preceding subsection amply demonstrates that petitioner has shown no reasonable probability that the outcome of his trial would have differed even if counsel had re-offered the evidence regarding the $1,000 payment and convinced the trial court to admit it.  Petitioner has not even identified any evidence in the record which supports a reasonable probability that the trial court would have admitted the evidence despite its initial reservations. Even if counsel had obtained a ruling excluding the evidence, petitioner has shown no reasonable

probability that the court of appeals would have granted relief on such exclusion  The exclusion of evidence is subject to harmless error analysis.  *See Ross v. State* 133 S.W.3d 618, 626 (Tex. Crim. App. 2004).  Based on the jury's credibility findings, there is no reasonable probability that the outcome of petitioner's trial would have differed with evidence regarding the $1,000 payment. Thus, the appellate court would have found the exclusion of such evidence harmless error, if error at all.

For the foregoing reasons, petitioner has shown no prejudice from the failure to perfect objection, and this claim entitles him to no habeas relief.

### 5.  *Failures to Object to Alleged Prosecutorial Misconduct*

In Claims 9G, 9Q, 9R, and 9S, petitioner claims that his attorney rendered ineffective assistance when he failed to object to the prosecutor (a) calling him "this guilty person" in voir dire; (b) improperly bolstering the credibility of State witnesses in closing; (c) using an extraneous offense; and (d) making an inflammatory closing statement.[19]  These claims correlate with petitioner's claims of prosecutorial misconduct 7B, 7D, 7E, and 7G.  Claim 9R also raises a claim that petitioner's attorney failed to request a limiting instruction related to the extraneous offense.

Because the Court has found no misconduct related to Claims 7B, 7D, 7E, and 7G, petitioner's attorney had no reason to object to such conduct.  Attorneys do not render deficient performance when they fail to assert a meritless objection.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).  Furthermore, with respect to Claim 7G (the corollary to Claim 9S), the Court found that the prosecutor's alleged inflammatory statement created no reasonable possibility that the verdict

---

[19] As previously set forth, petitioner claims that the following statement is inflammatory: "And it is insulting for the defense to suggest that because it's a woman and because it involves sex that she is not worthy of believe [sic], and the police have to check out everything about her."  The statement is found at SF-III at 283-84.

might have differed in the absence of such statement. Consequently, Claim 9S also fails for lack of prejudice to petitioner from the statement.

With respect to petitioner's claim in Claim 9R that his attorney rendered ineffective assistance by failing to request a limiting instruction to guide the jury's use of the extraneous offense, the Court finds no prejudice from such failure. Petitioner has not shown a reasonable probability that, but for the failure of his attorney to request such a limiting instruction, the outcome of his trial would have differed. The failure to request such an instruction does not undermine confidence in the outcome of petitioner's trial. That failure does not render the verdict unreliable or the proceeding fundamentally unfair.

### 6. *Waiving Right to Opening Statement*

In Claim 9I, petitioner claims that his attorney rendered ineffective assistance by waiving his right to make an opening statement. Although he contends that making an opening statement is always important as a matter of first impression, he fails to show how the failure actually prejudiced him. He has shown no reasonable probability that had his attorney made an opening statement the result of his trial would have differed. In the absence of a showing of actual prejudice, this claim entitles petitioner to no habeas relief.

### 7. *Failure to Request Mistrial*

In Claim 9J, petitioner claims that his attorney rendered ineffective assistance when he failed to request a mistrial after the trial court sustained an objection that the prosecutor was leading the witness. This claim correlates with petitioner's claim of prosecutorial misconduct 7C. The Court has already found that, if the prosecutor engaged in misconduct by using a leading question, such misconduct did not render petitioner's trial fundamentally unfair. Consequently, Claim 9J also fails

for lack of prejudice to petitioner from the use of the leading question.  The trial court, furthermore, specifically stated that it would not have granted a mistrial had counsel requested it.  S.H. Tr. at 168. Attorneys do not render deficient performance by not making a request for a mistrial that the trial court will deny.

### 8.  Failures to Request Jury Instructions

Petitioner also claims that he received ineffective assistance when his attorney failed to request jury instructions on his behalf.  In Claim 9P, he alleges generally that his attorney rendered ineffective assistance by failing to request any jury instructions.  In Claim 9N, petitioner claims that his attorney rendered ineffective assistance by failing to request a jury charge which defined what it means to be "without consent".  In Claim 9O, he claims that his attorney rendered ineffective assistance by failing to request an instruction for the lesser included offense of assault.  The latter two claims are intertwined with petitioner's claims of trial error, Claims 8B and 8C.

While addressing Claim 8B, the Court found no error by the trial court with respect to its failure to submit a lesser-included offense instruction to the jury.  Consequently, counsel did not render deficient representation by not requesting such an instruction.  Attorneys need not request an unnecessary or unwarranted jury instruction to render effective assistance of counsel.  Claim 9O thus entitles petitioner to no habeas relief.

With respect to Claim 8C, the Court found the failure to instruct the jury of the statutory meaning of "without consent" to be harmless error.  It found that there was no reasonable possibility that had the trial court properly instructed the jury that the verdict would have changed.  It found that the error had no substantial or injurious effect or influence in determining petitioner's guilt. When a trial court makes a harmless error in instructing the jury, there is no prejudice to the

defendant from the attorney's failure to remedy or correct such error during the proceedings. In this instance, providing an instruction which defined "without consent" would not have altered the verdict. The facts of this case fall squarely within the parameters of TEX. PENAL CODE ANN. § 22.011(b)(5). Under the facts of this case, there is no reasonable probability that the jury would not have convicted petitioner had it been provided an instruction consistent with § 22.011(b)(5). Claim 9N thus entitles petitioner to no habeas relief.

Claim 9P also fails because petitioner has shown no prejudice from the failure of his attorney to request any jury instructions at all. A claim of ineffective assistance of counsel does not succeed merely on a deficiency of counsel. The petitioner must affirmatively prove prejudice. Because petitioner's conclusory Claim 9P fails in that regard, the claim entitles petitioner to no habeas relief.

### 9. State Consideration of Claims of Ineffective Assistance of Trial Counsel

Petitioner raised each of his claims of ineffective assistance of trial counsel in his state writ. The state courts adjudicated the claims on the merits. The decisions of the state court do not appear inconsistent with *Strickland v. Washington*, 466 U.S. 668 (1984), the applicable Supreme Court precedent. The decisions do not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims of ineffective assistance of trial counsel raised in the instant petition.

### B. Ineffective Assistance of Appellate Counsel

In his fourth claim, petitioner complains that he received ineffective assistance from his appellate attorneys. He specifically contends that his attorney failed to raise five claims on appeal:

68

(1) he was denied his right to appeal by a failure to transcribe bench conferences that were held outside his hearing; (2) he was denied his right to appeal because two exhibits, as well as a page from the statement of facts, were missing from the appellate record,; (3) the prosecutor improperly questioned prospective jurors during voir dire; (4) his conviction is void because two disqualified jurors sat on his jury; and (5) "outcry" witness does not meet statutory requirements.

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

In this instance, petitioner raised his claims of ineffective assistance of appellate counsel in his state writ. The trial court found that petitioner was not prejudiced by any deficiency of appellate counsel with respect to petitioner's first three claims of ineffective assistance of appellate counsel. *See* S.H. Tr. at 160. With respect to petitioner's fourth claim of ineffective assistance of appellate counsel, the trial court found that "the record does not support the allegation" that two jurors were not qualified to sit on the jury. *Id.* at 161. With respect to petitioner's fifth claim, the trial court

found that, because trial counsel had no reason to object regarding the "outcry" witness, appellate counsel had no reason to present the claim to the court of appeals. *Id.*

Because this Court has determined that the claims raised in this petition lack merit, appellate counsel did not render ineffective assistance by not presenting petitioner's third and fifth claims to the court of appeals. In addition, with respect to his fourth claim, the record does not support finding that a disqualified juror served on petitioner's case. *See* SF-I at 74-75. Also, a failure to transcribe bench conferences or to forward all exhibits and pages from the statements of fact to the court of appeals does not of themselves deprive defendants of their right to appeal. Appellate counsel is not deficient in failing to present a meritless claim on direct appeal. Furthermore, to show prejudice from a failure to adequately brief an issue for appeal, petitioner must show a reasonable probability that the appeal would have had a different outcome had appellate counsel adequately addressed the issues. Petitioner has made no such showing of prejudice. The claim that his appellate attorney failed to raise claims on appeal thus provides no basis for federal habeas relief.

Further, by denying petitioner's state writ on the findings of the trial court, the Texas Court of Criminal Appeals adjudicated these claims on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on this claim.

## X.  DISREGARD FOR LEGISLATIVE INTENT BY COURT OF APPEALS

In his sixth ground for relief, petitioner claims that the court of appeals disregarded legislative intent when it ruled that the testimony of the complainant alone was sufficient to support his conviction.  He argues that such ruling is contrary to legislative intent to require corroboration or an outcry statement from the victim of a sexual assault.  For reasons already stated in these findings, the appellate ruling is not contrary to legislative intent.  This claim entitles petitioner to no habeas relief.

## XI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## XII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

UNITED STATES MAGISTRATE JUDGE